IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENTEX CORPORATION, | : | CIVIL ACTION |
| | : | NO. 3:12-CV-02549 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| RONALD ABBOTT, | : | |
| HELICOPTERHELMET.COM, | : | |
| HELICOPTER HELMETS, LLC, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
October 10, 2013

This civil action for trademark infringement, unfair competition and unjust enrichment, arising under 15 U.S.C. §§ 1114(1); 1125(a), was commenced on December 19, 2012, proceeds on the Amended Complaint, and offers for the Court's consideration and review a textbook discussion of in personam jurisdiction. Pl.'s Am. Compl. Jan. 22, 2013, ECF No. 8 [hereinafter Pl.'s Am. Compl.]. Before the Court is Defendant Ronald Abbott's ("Abbott") Motion to Dismiss. Def.'s Mot. Dismiss, Mar. 29, 2013, ECF No. 18 [hereinafter Mot. Dismiss]. For the reasons discussed below, the Motion to Dismiss is denied.

# I.    BACKGROUND

Gentex Corporation ("Gentex"), Plaintiff, asserts causes of action for trademark infringement under 15 U.S.C. §§ 1114(1); 1125(a), unfair competition, and state law claims of unfair competition and unjust enrichment.  Pl.'s Am. Compl. ¶¶ 19–34.  Gentex is a leading manufacturer of flight helmets that owns and continues to use the registered trademark "Gentex."  Id. ¶¶ 8–10.  Gentex's principal place of business is in Simpson, Pennsylvania. Ts. Evidentiary Hr'g 72, Oct. 1, 2013, ECF No. 45 [hereinafter Evidentiary Hr'g].

Defendant Ronald Abbott is the principal of Defendants Helicopter Helmet, LLC and Helicopterhelmet.com, businesses that are engaged in the manufacture and sale of helicopter helmets and other equipment via the internet and traditional channels of commerce.  Pl.'s Am. Compl.  ¶¶ 2–4.  Helicopterhelmet.com's principal place of business is in South Carolina, while Helicopter Helmet, LLC is a Delaware corporation with its principal place of business also in South Carolina. Id. ¶¶ 2–4.

Plaintiff alleges that the Defendants are knowingly and willfully infringing on the "Gentex" marks by using them to promote and sell their competing products.  Id. ¶¶ 12–15, 19–34.  Defendant advertises that he builds "Gentex helmets" with "Genuine Gentex Parts," which the Plaintiff claims is a

2

misrepresentation.  Id. ¶ 15.  Plaintiff argues the Defendants actually use only a

small number of Gentex parts, that the vast majority of their helmets are made

without Gentex parts, or are made with outdated Gentex parts of inferior

technology to the current models.  Pl.'s Answer Mot. Dismiss ¶ 12, Mar. 29, 2013,

ECF No. 20 [hereinafter Pl.'s Answer].

In the course of developing his business, Defendant Abbott established a

number of contacts with Pennsylvania.  The Defendants made at least seventeen

(17) sales to Pennsylvania over the past three years.  Evidentiary Hr'g, at 19.

Defendant Abbott alluded to more sales prior to that time, but did not produce

records beyond this scope.  See id.  Defendant Abbott also engaged in a number of

telephone conversations with individuals he knew to be in Pennsylvania when

conducting Defendants' business.  Id. at 36–38; 82; 85–87.  Additionally,

Defendant Abbott shipped at least one package bearing his name, "Ron Abbott," to

an address in Pennsylvania.  Id. at 41–47.  Moreover, although the domain name

helecopterhelmet.com was originally hosted in Florida, this company subsequently

moved to Pennsylvania where it is currently hosted.  Id. at 107–11.

In response to Plaintiff's complaint, on March 29, 2013, Defendant Abbott

filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative,

for Failure to State a Claim.  Mot. Dismiss, at 1–2.  The Court first addresses the

issue of whether it can exercise personal jurisdiction over the Defendant.

## II.   DISCUSSION

### A.   PERSONAL JURISDICTION OVER ABBOTT

#### 1.   Legal Standards

##### a.   Specific Personal Jurisdiction

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over nonresidents to the extent allowed under the law of the state where the court sits.  FED. R. CIV. PRO. 4(e); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984).  Pennsylvania's long-arm statute authorizes this Court to entertain jurisdiction over non-resident defendants, acting directly or by an agent, upon "[c]ontracting to supply services or things in this Commonwealth."  42 Pa. C.S.A. § 5322(a)(2).  Jurisdiction over such a person may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. C.S.A. § 5322(b).  Consequently, the reach of this Court's personal jurisdiction under the Pennsylvania statute is coextensive with the due process clause of the Fifth Amendment to the United States Constitution.  See Time Share Vacation Club, 735 F.2d at 63.

As general personal jurisdiction confers the broadest scope, the first step in the inquiry is to determine whether a defendant's contacts with the forum state are sufficient to support that jurisdiction. <u>Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino</u>, 960 F.2d 1217, 1221 (3d Cir. 1992). A party subject to the general jurisdiction of a state can be called to answer any claim against him in that forum, regardless of whether the cause of action has any connection to the state. <u>Id</u>. In the present case, however, the parties agree and the facts indicate that Defendant Abbott does not maintain sufficient contacts with Pennsylvania to be subject to the general jurisdiction of the courts of the Commonwealth. <u>See</u> Pl's. Br. Opp'n Mot. Dismiss 8–10, Apr. 22, 2013, ECF No. 27 [hereinafter Opp'n Mot. Dismiss].

Absent this general authority, a court may exercise jurisdiction only if specific personal jurisdiction exists. <u>Mellon Bank</u>, 960 F.2d at 1221. This inquiry focuses on the relationship among the' defendant, the forum, and the present litigation. <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002). The plaintiff's claim(s) must relate to or arise out of the defendant's contacts with the forum. <u>Mellon Bank</u>, 960 F.2d at 1221. Such contacts must be constitutionally sufficient so as to comport with the due process clause of the Fifth Amendment and with "traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citing <u>Milliken v. Meyer</u>, 311 U.S. 457,

463 (1941)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–76 (1985); Pinker, 292 F.3d at 368–69.  Contacts that are merely "random, isolated or fortuitous" are not sufficient to confer jurisdiction.  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  "Jurisdiction is proper, however, where contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."  Burger King, 471 U.S. at 475 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).  Further, "a corporate officer's contacts in his corporate capacity may be factored into the personal jurisdiction analysis when the officer is sued in his individual capacity."  Beistle Co. v. Party U.S.A., Inc., 914 F. Supp. 92, 95 (M.D. Pa. 1996) (Caldwell, J.) (citing Donner v. Tams-Witmark Music Library, Inc., 480 F. Supp. 1229 (E.D. Pa. 1979)).

The Third Circuit applies a three-part test to determine whether specific personal jurisdiction exists.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).  First, the defendant must have "purposefully directed its activities" at the forum state.  Id. (quoting Burger King, 471 U.S. at 472).  Second, the litigation must "arise out of or relate to" at least one of those activities.  Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 n. 9 (1984) (internal quotations omitted)).  Third, if the first two requirements are

met, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.'" Id. (quoting Burger King, 471 U.S. at 476).

b.    Plaintiff Bears the Burden of Demonstrating Facts Sufficient to Establish Personal Jurisdiction

The plaintiff bears the burden to prove, by a preponderance of the evidence, facts that indicate minimum contacts sufficient to exercise specific personal jurisdiction.  See Atiyeh v. Hadeed, CIV.A.04-2621, 2007 WL 853816, at *4 (E.D. Pa. Mar. 19, 2007) ("[I]f the Court conducts an evidentiary hearing, the plaintiff has the more substantial burden of proving that personal jurisdiction is proper by a preponderance of the evidence."); see also Mellon Bank, 960 F.2d at 1223; Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  "A Rule 12(b)(2) motion . . . is inherently a matter that requires resolution of factual issues outside the pleadings, i.e. where in personam jurisdiction actually lies." Time Share Vacation Club, 735 F.2d at 67 n.9.  Thus, once that defense is raised, the plaintiff must sustain its burden by establishing jurisdictional facts through sworn affidavits, testimony or other qualified evidence.  See Patterson by Patterson v. F.B.I., 893 F.2d 595, 603–04 (3d Cir. 1990); Time Share Vacation Club, 735 F.2d at 67 n.9.

2.    Analysis

### a. Defendant Purposefully Availed Himself of the Privileges and Benefits of Pennsylvania

First, the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum." <u>Sandy Lane Hotel</u>, 496 F.3d at 317 (citing <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)). Although physical entrance within the forum is not required, a deliberate targeting of the forum that inherently invokes "the benefits and protections of its laws" is necessary. <u>Burger King</u>, 471 U.S. 462, 474–75 (quoting <u>Hanson</u>, 357 U.S. at 253 (internal quotations omitted)); <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2001). Plaintiff's contacts with the state may be both of the traditional manner (for example, shipping goods to the forum in commerce) and contacts via the internet. <u>See, e.g.</u>, <u>Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.</u>, 480 U.S. 102, 105–06, 110 (1987); <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997).

### I. Defendant Maintains Internet Contacts With Pennsylvania

The ever-increasing prominence of internet commerce has required courts to develop personal jurisdiction inquiries that incorporate traditional minimum contacts principles in a framework applicable to this new medium. <u>See</u> <u>Zippo Mfg. Co.</u>, 952 F. Supp. at 1123–24 (articulating a "sliding scale" test measuring a

website's interactivity for purposes of the personal jurisdiction analysis).  The United States Court of Appeals for the Third Circuit adopted a dual approach that considers internet activity in conjunction with traditional contacts to scrutinize the purposeful availment prong of the jurisdiction analysis.  Toys "R" Us, Inc.v. Step Two, S.A., 318 F.3d 446, 452–54 (3d Cir. 2003).  Although the sliding scale of interactivity test developed in Zippo Manfacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997), is often invoked, the Third Circuit indicated "the requirement that the defendant intentionally interact with the forum state via the web site" is the crucial element to show purposeful availment in the internet context.  Toys "R" Us, Inc., 318 F.3d at 452.  Courts may, however, "consider the defendant's related non-Internet activities as part of the 'purposeful availment' calculus."  Toys "R" Us, Inc., 318 F.3d at 453.

In Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 449–50, 454–55 (3d Cir. 2003), the Third Circuit held that the defendant's commercially interactive website in Spain used in two sales to New Jersey was not sufficient to support the exercise of specific personal jurisdiction.  There, the defendant operated an allegedly infringing business principally in Spain, maintained a website that was entirely in Spanish, and the merchandise advertised on the site was only shipped directly to addresses in Spain.  Toys "R" Us, Inc., 318 F.3d at 454.  The shipments

9

to New Jersey were performed by an intermediate third-party in Spain.  <u>Id.</u>

In contrast, where defendants operated a website accessible in the forum state, received orders and payments from customers in that forum and shipped products there, a court found defendants "purposefully availed themselves of doing business" within that state.  See <u>L'Athene, Inc. v. EarthSpring LLC</u>, 570 F. Supp. 2d 588, 593–94 (D. Del. 2008); <u>see also</u> <u>TRE Servs., Inc. v. U.S. Bellows, Inc.</u>, No. 2:12-CV-00663, 2012 WL 2872830, at *4–5 (W.D. Pa. 2012) (finding personal jurisdiction over a Texas defendant who operated a commercially interactive website that accepted orders from Pennsylvania); <u>Watson v. Blessey Marine Servs. Inc.</u>, No. 11-cv-1252, 2011 WL 5878050, at *4–5 (W.D. Pa. 2011) (holding that personal jurisdiction was appropriate where a Louisiana defendant operated commercially interactive website on which plaintiff, a Pennsylvania resident, applied for a job and subsequent telephone conversations ensued).

With respect to internet contacts in the present matter, Defendant's website (<u>www.helicopterhelmet.com</u>) is hosted by a Pennsylvania-based company and was accessible in the state.  Evidentiary Hr'g, at 32, 107–11.  Unlike the Spanish respondent in <u>Toys "R" Us, Inc.</u>, Defendant's website allowed Pennsylvania residents to make purchases through the site; it was actually utilized to purchase a product that was subsequently shipped into Pennsylvania; it referenced Gentex's

marks explicitly on the site; and included a video featuring Defendant Abbott that referenced Gentex's marks. Evidentiary Hr'g, at 40, 72, 79, 82–88, 97, 107–08, 111–12, 118. Additionally, the website's order page automatically included "Pennsylvania" as an option in the "State" drop-down menu, demonstrating a standing intent to solicit and accept orders from the Commonwealth. Id. at 117. While these contacts are sufficient to indicate Defendant Abbott's intent to direct activities at the forum for his benefit, the Plaintiff's argument is further bolstered by consideration of the traditional contacts as well. See Toys "R" Us, Inc., 318 F.3d at 452.

> ii. Defendant Engaged in Non-Internet Contacts With Pennsylvania

The law is clear that the forum may exercise personal jurisdiction over the defendant where he is shown to have sold the allegedly infringing product in the forum state. See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97–98 (3d Cir. 2004); TriStrata Technology, Inc. v. Emulgen Laboratories, Inc., 537 F. Supp. 2d 635, 640–41 (D. Del. 2008) (rejecting *de minimus* argument and holding that sales of product to four state residents over two years was sufficient to sustain personal jurisdiction). Indeed, "courts consistently hold that when a party avails itself of the benefits of Pennsylvania commerce by shipping merchandise into the state sufficient contacts exist so as not to offend due process when jurisdiction is

maintained on the basis of these contacts." Spelling Goldberg Prods. v. Bodek & Rhodes, 452 F. Supp. 452, 454 (E.D. Pa. 1978) (citing Columbia Metal Culvert Co. v. Kaiser Indus. Corp., 526 F.2d 724 (3d Cir. 1975)).

A single contact with a forum state may support the exercise of specific jurisdiction over a defendant where the nature and quality of that contact provides a "substantial connection" with the forum. Burger King, 471 U.S. at 471; One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 323 (D. N.J. 1997); see also Zippo Mfg. Co., 952 F. Supp. at 1121 (noting the Supreme Court's focus on the quality of the contacts, rather than the quantity). In trademark infringement cases, a single sale of the infringing product in the forum state is sufficient to subject the foreign individual to personal jurisdiction. See, e.g., Columbia Metal Culvert Co., 526 F.2d at 729; One World Botanicals, 987 F. Supp. at 324; Spelling Goldberg Prods., 452 F. Supp. at 454.

For example, the court in Spelling Goldberg Productions v. Bodek & Rhodes, 452 F. Supp. 452, 453–54 (E.D. Pa. 1978), held that in personam jurisdiction existed over corporate defendants from New Jersey that shipped merchandise relevant to the trademark case into Pennsylvania. In this matter, the court found that "[t]here cannot be any serious question posed concerning the constitutionality of assuming personal jurisdiction on the basis of the corporate

defendants' shipment of merchandise into Pennsylvania." Spelling Goldberg Prods., 452 F. Supp. at 453–54.

Similarly, in One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 321–24 (D. N.J. 1997), the court held a nonresident defendant was subject to personal jurisdiction in the forum when it shipped products to the forum in response to a telephone call to the defendant from an individual soliciting the products. The court stated that "because defendant's contact with the forum was direct rather than 'attenuated,' and because the alleged injury" was sustained in the forum, it was foreseeable that defendant would be subjected to litigation in the forum. One World Botanicals Ltd., 987 F. Supp. at 324 (quoting Burger King, 471 U.S. at 475 n. 18).

Like the defendants in One World Botanicals Ltd. and Spelling Goldberg Productions, Defendant Abbott knowingly corresponded with an individual in the forum state and directly shipped an item to the forum state for his own commercial benefit. See One World Botanicals Ltd., 987 F. Supp. at 321–24; Spelling Goldberg Prods., 452 F. Supp. at 453–54; Evidentiary Hr'g, at 85–88, 97, 100–01, 111–12, 118. Defendant Abbott engaged in telephone contacts with an individual soliciting the allegedly infringing products while Defendant was aware the individual was in Pennsylvania. Evidentiary Hr'g, at 82, 85–87, 97. Subsequent to

this telephone conversation and corresponding internet order, Defendant Abbott manufactured the allegedly infringing product and knowingly shipped it to a Pennsylvania address, where it later arrived in a package bearing his name.  Id. at 85–88, 97, 100–01, 111–12, 118.  Moreover, the Defendant produced records of at least seventeen (17) separate orders from Pennsylvania over the previous three years, and alluded to an unspecified number of orders prior to this period.  Id. at 19–20, 122.

Therefore, the extent of Defendant Abbott's internet contacts coupled with his traditional contacts with Pennsylvania establish, by preponderance of the evidence, that the Defendant Abbott "purposefully availed [himself] of the privilege of conducting activities within the forum" sufficient for specific personal jurisdiction.  See Sandy Lane Hotel, 496 F.3d at 317 (citing Hanson, 357 U.S. at 253 (internal quotations omitted)).

### B.    The Litigation "Arises Out Of" The Contacts

Next, the Court must consider whether the present litigation "arise[s] out of or relate[s] to" the minimum contacts sufficient to exercise personal jurisdiction. Sandy Lane Hotel, 496 F.3d at 317 (quoting Helicopteros, 466 U.S. at 414–15 n. 9 (internal quotations omitted)).  The Supreme Court has not yet elucidated the precise scope of this requirement  and, as a result, lower federal courts have

applied myriad analyses.  See Helicopteros, 466 U.S. at 414; Sandy Lane Hotel,

493 F.3d at 318–19.  The three predominate approaches include a "proximate

cause" test, a "but-for" test, and a "substantial connection" or "discernible

relationship" test.  Sandy Land Hotel, 493 F.3d at 318–19.

The Third Circuit has found that "there is no 'specific rule' susceptible to

mechanical application in every case."  Id. at 323 (quoting Miller Yacht Sales, 348

F.3d at 100).  Although the Third Circuit adheres most closely to the "but-for" test,

in O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 323 (3d Cir. 2007), Judge

Chagares held "that specific jurisdiction requires a closer and more direct causal

connection than" provided by that test.  After establishing but-for causation, "the

analysis should hew closely to the reciprocity principle upon which specific

jurisdiction rests."  Id.  Indeed, "with each purposeful contact by an out-of-state

resident, the forum state's laws will extend certain benefits and impose certain

obligations . . . . Specific jurisdiction is the cost of enjoying the benefits."  Id.

(citing Int'l Shoe, 326 U.S. at 319; Schwarzenegger v. Fred Martin Motor Co., 374

F.3d 797, 802 (9th Cir. 2004)).  In performing the analysis, "[t]he causal

connection can be somewhat looser than the tort concept of proximate causation . .

. but it must nonetheless be intimate enough to keep the quid pro quo proportional

and personal jurisdiction reasonably foreseeable."  Sandy Land Hotel, 493 F.3d at

323 (citing <u>Miller Yacht</u>, 384 F.3d at 99–100).

For example, in <u>Sandy Lane Hotel</u> the court found that after plaintiff's initial contact with the defendant, phone calls and mailings to the forum state that induced the plaintiff to vacation at defendant's Barbados resort were sufficient to conclude the subsequent tort action arose from those contacts. 496 F.3d at 315–16, 323–24. The court deemed significant that "Pennsylvania law allows individuals and businesses to make and enforce binding agreements" and the defendant "availed itself of that opportunity . . . through its mailings and phone calls to Pennsylvania." <u>Id.</u> at 323.

Similarly, in <u>Colvin v. Van Wormer Resorts, Inc.</u>, 417 Fed. App'x. 183, 187 (3d Cir. 2011), the court found that but for the phone calls and faxes between the parties, plaintiff would not have made reservations for defendant's fishing trip on which plaintiff suffered an injury that spawned the litigation. Defendant was subject to specific personal jurisdiction in the plaintiff's chosen forum based on those contacts. <u>Id.</u> at 187–88.

In the case at bar, it is apparent that but for Defendant Abbott's Pennsylvania-related phone conversations and internet activity, the shipment of allegedly infringing products to Pennsylvania and these subsequent claims would not have occurred in this jurisdiction. <u>See, e.g.,</u> <u>Colvin</u>, 417 Fed. App'x at 187;

Sandy Lane Hotel, 496 F.3d at 315–16, 323–24. Moreover, like the defendant in Sandy Lane Hotel, Defendant Abbott benefitted from Pennsylvania law when, "through [his] mailings and phone calls to Pennsylvania," he engaged in the very commercial activity that gave rise to this dispute. Sandy Lane Hotel, 496 F.3d at 323.

Defendant Abbott not only solicited phone calls and internet orders from Pennsylvania, he also shipped the allegedly infringing product directly to that forum. Evidentiary Hr'g, at 85–88, 97, 100–01, 111–12. Indeed, the very website on which the Defendant advertises and solicits orders for his products is hosted in Pennsylvania. Id. at 110–11. These contacts are much closer to the claims at issue than mere but-for causation. See id. Therefore, the Court finds that this case "arise[s] out of or relate[s] to" a sufficient modicum of Defendant Abbott's contacts with Pennsylvania. Sandy Lane Hotel, 496 F.3d at 317 (quoting Helicopteros, 466 U.S. at 414–15 n. 9 (internal quotations omitted)).

C.  "Fair Play and Substantial Justice"

Finally, the Court must consider whether the exercise of jurisdiction otherwise comports with "traditional notions of fair play and substantial justice." Sandy Lane Hotel, 496 F.3d at 324 (quoting Int'l Shoe, 326 U.S. at 316 (internal quotations omitted)). Once minimum contacts are established, jurisdiction is

17

"presumptively constitutional." Id. To defeat this presumption, "the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (quoting Burger King, 471 U.S. at 477 (internal quotations omitted)).

The factors to consider in this analysis include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen, 444 U.S. at 292 (internal quotations omitted)).

In the present matter, several of these stated factors weigh in favor of the Plaintiff. Pennsylvania is undoubtedly interested in protecting the intellectual property of corporations doing business in the Commonwealth, and adjudicating disputes regarding alleged infringement is an important facet of that protection. See, e.g., Burger King, 471 at U.S. at 477; Alliance Bank v. New Century Bank, 742 F. Supp. 2d 532, 533 (E.D. Pa. 2010) (resolving trademark claims in favor of plaintiff, a Pennsylvania corporation). Further, the Pennsylvania-based Plaintiff is no doubt interested in obtaining convenient and effective relief. Id.

The Court is cognizant that Defendant Abbott's burden in traveling from South Carolina is not slight.  Nevertheless, this burden alone is not the "'compelling case' that litigation in Pennsylvania would be unreasonable and unfair" that Defendant must make to overcome the presumption of constitutionality and prevail on this factor.  Sandy Lane Hotel, 496 F.3d at 325 (quoting Burger King, 471 U.S. at 477).  Indeed, in Asahi Metal Industry Co. v. Superior Court Justice O'Connor stated that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."  480 U.S. 102, 114 (1987).

Thus, on balance, the Court finds that the exercise of jurisdiction over Defendant Abbott based on his minimum contacts with Pennsylvania is sufficient to comport with "traditional notions of fair play and substantial justice."  See Sandy Lane Hotel, 496 F.3d at 324 (quoting Int'l Shoe, 326 U.S. at 316 (internal quotations omitted)).

B.      DEFENDANT ABBOTT'S PERSONAL LIABILITY

1.      Legal Standards

In the alternative, Defendant Abbott claims he should be dismissed from this action because the complaint fails to state a claim upon which relief should be

granted.  See FED. R. CIV. P. 12(b)(6); Def.'s Br. Supp. Mot. Dismiss 4, Mar. 29, 2013, ECF No. 19 [hereinafter Def's. Br. Supp.].  Specifically, Defendant Abbott claims the Plaintiff's failure to include allegations for "piercing the corporate veil" of Helicopter Helmet LLC to support a claim that Abbott is personally liable for the LLC should be dispositive.  See Def.'s Br. Supp., at 4.

The rationale for piercing the corporate veil is that the corporation in question is something less than a bona fide independent entity (a mere alter ego of an individual), that the corporate form is being used to perpetuate fraud, or that corporate formalities have not been properly complied with.  Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3rd Cir. 1978).  This inquiry is separate and distinct, however, from the liability a corporate officer or agent might face for participating in wrongful acts.  See id. at 606 (noting that such acts have included, inter alia, torts, unfair competition and trademark infringement).  The absence of findings that the corporate veil should be pierced does not affect an individual officer's liability as a participant in the wrongful act.  See United States ex rel. Haskins v. Omega Inst., Inc., 11 F. Supp. 2d 555, 565 (D. N.J. 1998); Beistle, 914 F. Supp. at 95–96.

Indeed, "[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual

participant in the tort." Donsco, 587 F.2d at 606 (noting this principle applies equally to Lanham Act causes of action); see also Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 160 (3d Cir. 1984) ("An officer or director of a corporation who knowingly participates in the infringement can be held personally liable . . . ."). As a general rule, "[i]ndividuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts." Bowers v. NETI Techs., Inc., 690 F. Supp. 349, 357 (E.D. Pa. 1988). Nevertheless, "[a] recognized exception to this general rule is that a 'corporate agent may be held personally liable for torts committed in the corporate capacity.'" Mendicino v. Lotus Orient Corp., CIV.A. 10-1867, 2010 WL 4104580, at *7 (E.D. Pa. Oct. 19, 2010) (quoting Nat'l Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc., 785 F. Supp. 1186, 1191 (W.D. Pa. 1992)). This exception balances the traditional rule with "the principle that, in Pennsylvania, corporate officers and directors are liable for the tortious acts the corporation commits under their direction or with their participation." Maleski by Taylor v. DP Realty Trust, 653 A.2d 54, 63 (Pa. Commw. 1994) (citing Al-Khazraji v. St. Francis Coll., 784 F.2d 505 (3d Cir. 1986), aff'd, 481 U.S. 604 (1987)).

To balance these competing interests, courts consider: "(1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the

extent and nature of the officer's participation in the alleged tortious conduct."

Mendicino, CIV.A. 10-1867, 2010 WL 4104580, at *7 (citing Elbeco, Inc. v.

Estrella de Plato, Corp., 989 F. Supp. 669, 676 (E.D. Pa. 1997)); see also

McMullen v. European Adoption Consultants, Inc., 129 F. Supp. 2d 805, 811–12

(W.D. Pa. 2001).

For example, in Beistle Co. v. Party U.S.A., Inc. 914 F. Supp. 92, 93, 96–97

(M.D. Pa. 1996), Judge Caldwell held that the consideration of an officer's

corporate contacts with the forum was proper and that he was subject to personal

jurisdiction within Pennsylvania for intellectual property and unfair competition

claims.  There, the defendant was the president of the corporation, a member of its

board of directors,  an employee, and the person ultimately responsible for

distribution of the allegedly infringing material.  Beistle, 914 F. Supp. at 93,

96–97.

Similarly, in Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3rd Cir.

1978), the court held that defendant corporation's president could be individually

liable for acts of unfair competition that he personally committed.  There, the

president was "the central figure" in the corporation and he "authorized and

approved the acts of unfair competition" that were the basis of the claims.  Donsco,

587 F.2d at 606.

2. <u>Analysis</u>

From the record, it does not appear that Helicopter Helmet LLC was anything less than a bona fide independent corporate entity, or that Plaintiff intends to allege as much. Nevertheless, as the case law makes clear, Defendant Abbot cannot use the corporate structure of the LLC to shield himself from liability arising from his own intentional acts. <u>See</u> <u>Donsco</u>, 587 F.2d at 606. This is precisely what Plaintiff alleges. <u>See</u> Pl.'s Am. Compl. ¶¶ 20-22; 24-28; 30-34.

Like the corporate officers in <u>Beistle</u> and <u>Donsco</u>, Defendant Abbott is the principle and highest authority in Helecopter Helmet's corporate structure. <u>See</u> <u>Donsco</u>, 587 F.2d at 606; <u>Beistle</u>, 914 F. Supp. at 93, 96–97; Evidentiary Hr'g, at 24–25, 27–30, 52, 108. As discussed, he maintained several contacts with Pennsylvania in connection with these claims—including telephone calls in which he conducted business as the authoritative representative of Helecopter Helmet with individuals he knew to be in Pennsylvania. Evidentiary Hr'g, at 80–82, 85. Indeed, Defendant Abbott continually reinforces that "[w]hen you buy from helicopterhelmet.com . . . you are dealing with me personally." <u>Id.</u> at 52. Thus, Defendant Abbott was ultimately responsible for the production and dissemination of the allegedly infringing materials as the "central figure" in the corporation. <u>See, e.g.,</u> <u>Donsco</u>, 587 F.2d at 606; <u>Beistle</u>, 914 F. Supp. at 93, 96–97.

23

Defendant further argues that Plaintiff's allegations against Defendant Abbott as an individual are insufficient because they does not distinguish between the alleged acts of the corporation (Helicopter Helmet LLC) and those of Abbott. Def. Reply Brf. Mot. Dismiss 11–14, May, 9, 2013, ECF No. 29. Defendant Abbott claims that by affixing Helicopter Helmet to each allegation involving Abbott (for example, "Mr. Abbott and Helicopter Helmets") and referring to the two collectively as "their," Plaintiff is merely imputing liability from the corporation to Abbott without being sufficiently particular about the specific acts in which Abbott engaged. Id. The Court does not read the complaint so narrowly.

Additionally, and more importantly, no such level of specificity is required to state a claim against Abbott for participating in the causes of action alleged: trademark infringement, unfair competition, and unjust enrichment. To plead a case against a corporate officer requires only such allegations that show he *participated in* the wrongful acts. See Beistle, 914 F.2d at 96 (citing Maleski, 653 A.2d at 62–63). Allegations that Abbott advertises, manufactures and offers to sell the allegedly infringing products are sufficient to state that he participated in such conduct. See Donsco, 587 F.2d at 606 (noting that authorizing and approving acts of unfair competition constitute actual participation).

Finally, with or without Helicopter Helmet's name in the text of the

complaint, Plaintiff still states a plausible claim against Defendant Abbott for trademark infringement, unfair competition and unjust enrichment.  See, e.g., Donsco, 587 F.2d at 606; see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The addition of Helicopter Helmet to the allegations does not change Abbott's liability.  See Donsco, 587 F.2d at 606.

## III.  CONCLUSION

For the reasons discussed, Defendant's Motion to Dismiss is denied.  An appropriate Order follows.

BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge