# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **GENTEX CORPORATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 12-CV-2549** |
| | : | |
| **RONALD ABBOTT,** | : | **JUDGE BRANN** |
| **HELICOPTERHELMET.COM** | : | |
| **and HELICOPTER** | : | |
| **HELMET, LLC,** | : | **ELECTRONICALLY FILED** |
| | : | |
| **Defendants.** | : | |

---

## GENTEX CORPORATION'S MEMORANDUM OF LAW
## SUBMITTED PURSUANT TO OCTOBER 14, 2014 ORDER OF COURT

---

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, L.L.P.
Suite 200, 425 Spruce Street
Scranton, PA 18505

Attorneys for Plaintiff,
Gentex Corporation

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    Defendants' Motion To Compel Is Another Abuse of the Discovery
        Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    Gentex's Sales of HGU Helmet Products
            Are Not Relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    Gentex's May 9, 2014 Production Is Not
            Incomplete . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.    Defendants' Requests for Voluminous
            Financial Records Are Moot as a Result of
            Gentex's Offer to Limit Its Claim for
            Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        D.    There Are No Licensing Agreements or
            Sales Manuals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        E.    Gentex's Response to Defendants' Second
            Joint Request for Production of Documents
            Is Not Incomplete . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        F.    Gentex's Responses to Defendants' Third
            Joint Request for Production of Documents
            Is Not Incomplete . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        G.    Gentex's Responses to Defendants' Fourth
            Joint Request for Production of Documents
            Is Not Incomplete . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

H.    Gentex's Response to Defendants' Fifth
      Joint Request for Production of Documents
      Is Not Incomplete . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

I.    Defendants Have Not Established Good
      Cause To Triple the Number of Allowable
      Requests for Admission . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

J.    Defendants Should Be Barred From Serving
      Additional Requests for Production of
      Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

K.    Defendants Should Be Limited to the
      Number of Depositions Set Forth in the
      Joint Case Management Plan and the Length
      of Depositions Set Forth in Rule 30(d)(1) . . . . . . . . . . . . . . 21

L.    Defendants Should Not Be Allowed To
      Take the Deposition of Gentex's Former
      General Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.   Defendants Should Be Compelled To Fulfill Their Discovery
      Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

A.H. Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198 (3d
    Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bayer AG v. Betachem, Inc., 173 F.3d 188 (3d Cir. 1999) . . . . . . . . . . . . . . . . . 5

Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195 (3d Cir. 2006) . . . . . . . . . . . 13

Crawford El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 140 L. Ed. 2d 759
    (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Exxon Corp. v. Humble Exploration Corp., 695 F.2d 96 (5th Cir. 1983) . . . . . . 6

Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 2d 451 (1947) . . . . . 4

In re Linerboard Trust Litig., 237 F.R.D. 373 (E.D. Pa. 2006) . . . . . . . . . . . . . 22

Lucent Information Management, Inc. v. Lucent Technologies, Inc., 186 F.3d
    311 (3d Cir. 1999), cert. denied, 528 U.S. 1106 (2000) . . . . . . . . . . . . . . . 6

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d
    253 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 21

Orlando v. Opera Company of Philadelphia, No. 95-CV-3860, 1996 WL 421956,
    at *1 (E.D. Pa. July, 24, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986) . . . . . . . . . . 21

In re Teleglobe Comms. Corp., 493 F.3d 345 (3d Cir. 2007) . . . . . . . . . . . . . . . 15

## STATUTES

15 U.S.C. § 1065 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C. § 1127(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 26(b)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 26(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 30(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

L. R. 36.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# INTRODUCTION[1]

Despite Defendants' many efforts to portray this case as complex, it is not.  Plaintiff Gentex Corporation ("Gentex") seeks to enforce its exclusive right — granted by the United States Patent and Trademark Office in the form of trade mark registrations that are now incontestable under 15 U.S.C. § 1065 — to use the "Gentex," "SPH-4" and "SPH-5" marks in connection with the sale of aircrew helmets.  There is no dispute that Defendants Ronald Abbott and Helicopter Helmet LLC used Gentex's registered marks to market and sell their helmets in direct competition with Gentex.  Defendants referred to their helmets as "Gentex," "generic Gentex" or "SPH-4B" in advertising and marketing materials, affirmatively misrepresented to customers and prospective customers that they were selling "Gentex" helmets and mislabeled their helmets as "Gentex Helmets" or "Gentex SPH-4B" helmets on customer invoices (examples are filed under seal as Exhibit "A").  They did all of this knowingly and in open defiance of Gentex's demands that they cease and desist use of its registered marks.  Again, this is not a complex case.

---

[1]  Gentex submits this brief in a good faith effort to address the various issues raised by Defendants in the Memorandum in Support of Motion To Compel Discovery filed on September 29, 2014 (Doc. No. 100) and the letters received from defense counsel since that date.  Gentex reserves the right to submit additional argument in the event Defendants assert new or different issues in any supplemental memorandum or at the hearing on November 25, 2014.

Unable to deny these facts or the liability that attaches, Defendants are attempting to avoid the day of reckoning through a strategy of delay and obstruction.  They asserted meritless counterclaims seeking cancellation of the "Gentex," "SPH-4" and "SPH-5" marks based on nothing more than impermissible legal conclusions.[2]  They approach discovery as a war of attrition, hoping that the voluminous, insurer-funded discovery requests and inevitable motions practice will make this litigation too burdensome and expensive for Gentex to pursue.[3] The discovery that is contested, however, has no bearing whatsoever on any disputed issue in this litigation.  Further, the contested discovery requests are demonstrably overbroad and unreasonably burdensome in that they seek extraneous minutiae regarding virtually every aspect of Gentex's operations and finances.  In addition, Defendants are pressing for the production of privileged communications and the deposition of Gentex's former in-house counsel without

---

[2]  Gentex moved to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  See Doc. Nos. 69, 70, 71 and 72.  The motion is fully briefed and ripe for disposition.  If the motions are granted, many of the arguments advanced by Defendants in support of the challenged discovery requests will become moot.

[3]  The procedural posture of this case and the related declaratory judgment action create an interesting conflict for Defendant Ronald Abbott.  If, as we expect, Mr. Abbott is found to be liable for willfully infringing on Gentex's marks, he will have no insurance coverage and he will be personally obligated to pay any judgment (including any treble damage award) and to reimburse Gentex for its reasonable attorneys' fees, including the fees incurred by Gentex in responding to the abusive discovery tactics employed by Mr. Abbott's insurance-funded lawyer. See 15 U.S.C. § 1117.

any legal or factual basis.  And yet, Defendants propose extensions of virtually every limitation imposed on discovery, including the number of depositions, the length of those depositions and the number of written discovery requests.[4]

It is patently obvious that Defendants are perpetuating discovery for improper purposes, not to uncover potentially relevant facts.  Counsel for Gentex expressed concern about Defendants' motives at the discovery conference on April 8, 2014 and that concern was been substantiated over and over again.  Defendants' discovery requests should be recognized for what they are — efforts to harass and annoy and ultimately make this case prohibitively expensive and burdensome for Gentex to pursue — and Defendants' motion to compel should be soundly rejected.  Further, the Court should impose reasonable restrictions and limitations on the remainder of discovery in this case.

Finally, Defendants should be ordered to produce the relevant information that they have improperly withheld from Gentex in discovery.

---

[4] This is not the only forum in which Defendants have engaged in abusive discovery tactics.  They are also mounting a wide-ranging and harassing discovery campaign against Defendants' domestic and international distributors.  They are using the subpoena power conferred by the federal rules to compel the production of highly sensitive, competitive business information and other confidential records pertaining to business operations and business strategies.  The subpoenas are just another means of burdening Gentex and its supply chain.

3

## **ARGUMENT**

I.     **Defendants' Motion To Compel Is Another Abuse of the Discovery Process.**

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978) (quoting Hickman v. Taylor, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  Information that is not "reasonably calculated to lead to the discovery of admissible evidence," is not within the scope of Rule 26(b)(1) of the Federal Rules of Civil Procedure and therefore is not properly discoverable.  Id. at 351-52, 98 S. Ct. at 2390.  District courts necessarily have "broad discretion to tailor discovery narrowly" to meet the needs of each case.  Crawford El v. Britton, 523 U.S. 574, 599, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998).  Further, the Federal Rules of Civil Procedure expressly direct that a district court "must limit the frequency or extent of discovery" if the proposed discovery is "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in

4

resolving the issues." Fed. R. Civ. P. 26(b)(2)(C); <u>see</u> <u>also</u> <u>Bayer AG v.</u>

<u>Betachem, Inc.</u>, 173 F.3d 188, 191 (3d Cir. 1999) (acknowledging district court's

authority to limit discovery).  Further, discovery is properly denied when a party's

aim is to cause delay or to harass the party from whom discovery is sought.

<u>Oppenheimer</u>, 437 U.S. at 352 n.17, 98 S. Ct. at 2390.

Application of these principles to the circumstances in this case leads

ineluctably to the conclusion that Defendants have abused the discovery process.

Their motion to compel additional discovery should be denied.

### A.    Gentex's Sales of HGU Helmet Products Are Not Relevant.

The trademark infringement and false advertising claims in Gentex's

Second Amended Complaint are premised on Defendants' infringing use of the

"Gentex" and "SPH" marks.  Defendants' broad requests for information

concerning Gentex's entirely different HGU product line are not relevant.

Contrary to the arguments in Defendants' brief, sales of HGU products have no

bearing whatsoever on Gentex's damage claim or to Defendants' counterclaim

seeking cancellation of the "Gentex" and "SPH" marks due to alleged

abandonment.  (Supp. Br. at 7-8.)  Gentex's sales of other products cannot in any

way be deemed relevant to the calculation of sales of "SPH" helmets which Gentex lost as a result of Defendants' infringement.  Nor are sales of other products in any way relevant to the issue of trademark abandonment.  To cancel a trademark registration on grounds of abandonment, the proponent of cancellation must establish non-use of the mark plus an intent not to resume use.  15 U.S.C. § 1127(1).  Sales of unrelated goods are not logically relevant to either prong of the abandonment analysis and information regarding such sales will not lead to admissible evidence.  Not surprisingly, no court has held that sales of unrelated goods are properly discoverable in a case in which the infringer alleges abandonment of a mark.[5]  Defendants' pursuit of information pertaining to Gentex's HGU products is a fishing expedition and should not be allowed.[6]

---

[5]  The cases cited by Defendants on page 8 are not even remotely on point.  The issue in Lucent Information Mgmt. was whether the plaintiff's limited prior use of a mark was sufficient to establish market penetration for purposes of obtaining "priority" over later registration of the same mark by the defendant.  Lucent Information Management, Inc. v. Lucent Technologies, Inc., 186 F.3d 311 (3d Cir. 1999), cert. denied, 528 U.S. 1106 (2000).  The issue in Exxon Corp. was whether arranged sales of products through a trademark protection program were sufficient to establish "use"of a mark for purposes of 15 U.S.C. § 1127.  Exxon Corp. v. Humble Exploration Corp., 695 F.2d 96 (5th Cir. 1983).  Neither case supports the proposition that a defendant can take discovery concerning sales of unrelated goods under the guise of pursuing an abandonment defense.

[6]  Defendants repeat the request for records relating to Gentex's HGU products throughout their brief and the various sets of written discovery.  (See e.g. Supp. Br. at 9, 10, 13.)  For the reasons set forth above, none of these requests are in any way relevant to any disputed issues in this case and Gentex should not be compelled to produce such obviously extraneous information.

**B.      Gentex's May 9, 2014 Production Is Not Incomplete.**

Unable to point to any relevant, responsive information that was not produced in response to Defendants' Second Joint Request for Production of Documents, Defendants improperly take issue with the format in which Gentex stored and presented its information.  (Supp. Br. at 8-10.)  Such grousing, of course, provides no basis to compel additional discovery.

First, Defendants complain, without citation to any relevant support or authority, that Gentex should be required to produce detailed product and financial information <u>dating back nearly 25 years</u>.  (Supp. Br. at 9.)  Defendants have not offered any logical basis for requiring the production of records dating back to 1990 and there is no logical basis for such extensive discovery.  The obviously burdensome request for voluminous records — untethered to any fact or circumstance at issue in this litigation — should be denied.[7]

Second, Defendants complain that the business records they

---

[7]  It should be noted that Defendants initially refused to produce any records pre-dating 2009.  They have since reversed course and represented that they are "attempting to see if additional invoices from 2007 through 2010 can be restored."  Since the statute of limitations applicable to claims under the Lanham Act is six years, Defendants should be compelled to produce sales records dating back at least to January 1, 2006.  (See <u>infra</u> pp. 22-23.)

specifically requested — inventory reports, lists of part numbers and cost data —

are "obtuse," lack "key" or "explanatory information" or are "inadequate." (Supp.

Br. at 9-10.) These complaints are baseless. Gentex produced the business

records that Defendants identified. That the records are formatted or presented

differently than Defendants would like or do not contain information that the

Defendants wish they asked for is no cause for complaint and is certainly not a

basis to compel more discovery.

Third, Defendants seek to compel the production of documents that

do not exist. For example, Defendants claim that the customer survey records

produced in discovery "appear to be recent surveys only" and that "[e]arlier

surveys should also be produced." (Supp. Br. at 10.) Such speculation is

unwarranted. Further, since such surveys are not relevant to the claim of defense

of any party, there is no basis to compel production of additional surveys.

Finally, and most importantly, Defendants offer no explanation as to

how the purportedly missing information bears on any disputed issue in this case.

The information sought — which Defendants generally characterize as

"explanatory information," "details showing the attribution" and "supporting data"

(Supp. Br. at 10) — is not relevant to the claim or defense of any party and the

pursuit of such minutiae can only be intended to annoy and harass and unnecessarily delay the disposition of this action.

For all of these reasons, Defendants fail to justify a need for additional discovery and their request for an order compelling additional disclosures in response to Defendants' Second Joint Request for Production of Documents should be denied.

C.     **Defendants' Requests for Voluminous Financial Records Are Moot as a Result of Gentex's Offer to Limit Its Claim for Damages.**

In their Second Joint Request for Production of Documents, Defendants posed 110 separate requests for "any and all" or "all documents" pertaining to Gentex's operations, finances and corporate structure, including detailed financial statements, financial reports, charts of accounts, forecasts, budgets, general ledger entries, price information, expenses, capital expenditures, invoices, deductions, accounting policies, working papers, worksheets, reconciliation statements, inventory records, shipment records and documents relating to company assets, capital structure and business valuation. (See Defs.' Supp. Br. at Ex. A.) Responding to such requests would take many months and

require review of voluminous electronic and paper files and devotion of considerable employee effort.  Moreover, Defendants have no legitimate need for such minutiae.  Gentex has already produced profit and loss information for the aircrew helmet division for the relevant time period.  Gentex has also produced its sales records and cost information for the "SPH" products at issue in this litigation.  Defendants have everything they need to quantify the lost profits that Gentex suffered as a result of Defendants' infringing sales and unlawful sales practices.

Unwilling to accept this reality, Defendants insisted on complete production of the more than 100 categories of records.  As a compromise, and in order to avoid the burden and expense of litigating the issue, Gentex proposed to withdraw its claim for lost profits and seek only recovery of the unjust enrichment that inured to Defendants as a result of the infringement as well as injunctive relief to prevent further acts of infringement.  Defendants refused to accept the compromise.[8]

---

[8] By letter dated August 25, 2014, Gentex identified the 76 discovery requests in Defendants' Second Joint Request for Production of Documents that would become moot if the proposed stipulation were accepted.  By letter dated September 3, 2014, Defendants agreed that 34 of the 76 requests would become moot, but insisted that Gentex respond to the remaining 42 requests even though they are similar to or duplicative of other requests that Defendants concede will become moot.  At that time, Defendants claimed that the other 42 requests remained relevant

Defendants now claim that the requested financial information is "relevant to infringement issues, and issues pertaining to affirmative defenses and counterclaims." (Supp. Br. at 11.)  Tellingly, however, Defendants offer no explanation as to how the requested financial and operational records have any bearing on any issue other than the claim for lost profits that Gentex has offered to withdraw.  They refer to the Lapp factors in their brief, (Supp. Br. at 12), but do not and cannot explain how the proposed discovery of Gentex's sensitive financial and operational records might logically tend to establish any of the Lapp factors.

More importantly, the Lapp factors do not apply in this case involving use of the same marks to sell competing goods.  As noted above, Gentex's claims are premised on Defendants' proven practice of misrepresenting their helmets as Gentex helmets.  The Lapp factors are not implicated in these circumstances.  The Third Circuit has made clear that the Lapp factors apply in determining whether there is a likelihood of confusion between similar marks and the factors are not

_____

to the reasonable royalty analysis.  When Gentex confirmed that the proposed stipulation included withdrawal of any claim for reasonable royalty, counsel for Defendants then took the position that "Defendants are entitled to present 'reasonable royalty' as an alternative to Plaintiff's 'unjust enrichment' claim'" even if Gentex elects not to pursue a claim for reasonable royalty. This waffling underscores that Defendants will say anything to perpetuate discovery.  In any event, Defendants do not invoke the reasonable royalty analysis in their brief and therefore it can be concluded that they have abandoned this argument.

required to be considered in a case such as this where the trademark owner and alleged infringer deal in competing goods and use the same mark.  See A.H. Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 214 (3d Cir. 2000) ("[W]e do not hold that a District Court must use the factors.  In fact, our precedents suggest the opposite.  If products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves.") (emphasis in original).  Put simply, the Lapp factors do not and cannot justify the broad, intrusive discovery that Defendants are proposing.

For these reasons, Defendants' motion to compel the production of additional records in response to their Second Joint Request for Production of Documents should be denied.

**D.      There Are No Licensing Agreements or Sales Manuals.**

Unwilling to accept that no such records exist, Defendants continue to press for production of licensing agreements relating to SPH products and sales materials and sales presentations.  (Supp. Br. at 12-14.)  Its repeated requests are harassing.

Gentex has never granted a license to use the "Gentex" or "SPH"
marks in connection with the sale of aircrew helmets.  Accordingly, there are no
relevant documents responsive to Request for Production Nos. 60, 61, 63, 64, 87,
88 and 89.  Contrary to Defendants' expert's contention,[9] the agreement between
Gentex and Aerial Machine and Tool is a distribution agreement, not a license
agreement.  The agreement authorizes Aerial Machine and Tool to sell, inter alia,
Gentex's "SPH" helmets but does not convey a license to manufacture products
bearing the "SPH" or "Gentex" marks.  It is not a licensing agreement.  Gentex
committed no error in responding that there are no licensing agreements relating to
the products at issue in this litigation.  There is no basis to compel any additional
discovery on this subject.[10]

---

[9] Defendants made an identical request for "[a]ll license agreements in which Gentex
Corporation is a licensor or licensee of any of the marks SPH-4, SPH-5, and/or GENTEX" in
Paragraph 32 of the Third Joint Request for Production of Documents.  (See Supp. Br. at 16.)

[10] In support of their argument, Defendants rely on a sworn declaration from their
proposed damages expert, Frank A. Bernatowicz, who opines that certain categories of
information requested by Defendants are "plainly relevant" and certain objections lodged by
Gentex are "not well-taken."  (See Ex. P to Defs.' Supp. Br. ¶ 9.)  Mr. Bernatowicz also opines
that Gentex's discovery responses are "inaccurate."  (Id. ¶¶ 8, 10, 11.)  In offering such legal
opinions, Mr. Bernatowicz is far outside of his claimed area of expertise and is improperly
usurping the role of the Court.  See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d
Cir. 2006) ("an expert witness is prohibited from rendering a legal opinion . . . [s]uch testimony
is prohibited because it would usurp the District Court's pivotal role . . .").  His so-called
opinions are entitled to no weight whatsoever and his Declaration should be stricken in its
entirety.

13

Gentex does not publish sales manuals or deliver sales presentations to customers.  There is thus no basis to compel any additional discovery on this subject.

E.  **Gentex's Response to Defendants' Second Joint Request for Production of Documents Is Not Incomplete.**

On pages 14-15 of their supporting brief, Defendants recite several additional complaints concerning Gentex's response to Defendants' Second Joint Request for Production of Documents.  None of the complaints have merit.

First, Defendants have not established and cannot establish a proper purpose for the obviously overbroad Request for Production No. 94 ("All documents that describe the history of SPH type and HGU type helmets including first inception through the current date.") or Request for Production No. 109 ("Any and all communications between Gentex and its distributors . . . relating to Helicopter Helmet, Ronald Abbott or the products of Helicopter Helmet and/or Ronald Abbott.").  The requests are not relevant to any disputed issue in this case and compliance with such overbroad requests would clearly pose an unreasonable and undue burden.  Moreover, with respect to Gentex's distributor, Gibson &

Barnes, the request would improperly invade the joint interest privilege.[11]  For all

of these reasons, there is no basis to compel further production in response to

Request for Production Nos. 94 or 109.

Second, Defendants are mistaken in claiming that Gentex failed to

produce documents in response to Request for Production Nos. 95, 96, 98, 99,

100, 105, 107, 108 and 110.  (Supp. Br. at 15.)  Gentex has either produced

documents responsive to these requests or has informed Defendants that it is

unable to locate responsive documents.[12]  If additional responsive documents are

located, they will be provided in accordance with the supplementation obligation

in Rule 26(e).

---

[11]  The joint or common interest privilege protects against the compelled disclosure of communications made by parties with a common interest in furtherance of a joint litigation position.  See In re Teleglobe Comms. Corp., 493 F.3d 345, 364 (3d Cir. 2007).  Gentex and Gibson & Barnes are parties to such an agreement.  Defendants suggest that such a privilege should not be recognized because Gentex has not offered a "privilege log" to substantiate its invocation of the privilege.  (Supp. Br. at 14.)  This argument is without merit and is based on an impermissible double standard.  Gentex overtly invoked the common interest privilege in response to specific requests and, to the extent no privilege log was supplied, this was in accordance with Mr. Chasan's proposal that no privilege log is necessary for communications relating to this litigation.  Moreover, it is important to note that Defendants have asserted an identical objection to written discovery requests served by Gentex on the basis of "the common interest privilege" and have declined to provide a privilege log specifying those communications.  What is good for the goose is also good for the gander.

[12]  It must be noted that, in response to many of the cited requests, Gentex did not confirm the existence of responsive documents but rather responded that "[r]esponsive documents, if any, will be made available . . . ."  Gentex has done exactly what it indicated it would do.

15

**F.    Gentex's Responses to Defendants' Third Joint Request for Production of Documents Is Not Incomplete.**

On pages 15-17 of their brief, Defendants take issue with a number of Gentex's responses to Defendants Third Joint Request for Production of Documents.  Again, their complaints are without merit.

With respect to the video of the testing of Defendants' helmet that is the subject of Request for Production No. 8 (GC 3471), Gentex has been unable to locate the video.  Its search continues.  Consistent with Gentex's response, the video will be produced if and when it is located.

Request for Production Nos. 33 and 34 are extremely broad in that they purport to require the production of "[d]ocuments showing all changes to the Gentex web site . . . or any other web site under [Gentex's] control or ownership . . . that were made between June 1, 2012 and the present time" and "[d]ocuments showing all communications made by Gentex to any third party requesting or directing . . . any changes to its web site, advertising materials, or other literature or documents relating to . . . any . . . Gentex products. . . ."  The requests are obviously overbroad, unduly burdensome and in no way calculated to lead to the discovery of admissible evidence.  Defendants tellingly offer no justification for

16

such an expansive search.  The only explanation of relevance offered by

Defendants — that the requested information "may disclose that Gentex has made

belated efforts to circulate information" concerning products that it may no longer

sell (Supp. Br. at 16) — is based on a false premise and therefore does not

establish relevance.  Contrary to Defendants' assertion, Gentex continues to

manufacture and sell helmets and helmet parts bearing the "Gentex" and "SPH"

marks.  There is simply no basis to compel an exhaustive production of "all"

changes to the Gentex website concerning "any Gentex products."

Defendants also take issue with Gentex's responses and objections to

Request for Production Nos. 35-38 (Supp. Br. at 16-17) but again fail to explain

how the information they are seeking is relevant to any disputed issue in this case.

Again, such unproven assertions offer no basis compel additional discovery

### G.    Gentex's Responses to Defendants' Fourth Joint Request for Production of Documents Is Not Incomplete.

Typical of their abusive approach to discovery, Defendants claim that

Gentex's responses to their Fourth Joint Request for Production of Documents are

incomplete without identifying a single omission.  (Supp. Br. at 17-20.)  In fact,

there are none.

For example, in Request for Production Nos. 3 and 10, Defendants seek to compel the production of documents relating to the meaning, development and conception of the "SPH" mark. In response, Gentex produced documents relating to its registration of the "SPH-3," "SPH-4" and "SPH-5" marks, the latter two of which are now, as a matter of law, incontestable. Gentex also produced advertising materials, sales records and other records documenting the marketing and sale of "SPH" products. Nothing more can be required.[13]

Further, Defendants complain that Gentex has not produced documents evidencing that the "SPH" marks "were used in commerce recently." (Supp. Br. at 19.) Again, Defendants misstate the evidence. Gentex has produced records showing that Gentex has sold and continues to sell helmets, accessories and spare parts using the "SPH" marks as well as product data sheets and other advertising materials relating to those products. Nothing more is required to comply with Request for Production Nos. 4-9.

_____

[13] Defendants once again erroneously invoke the Lapp factors as an excuse for their burdensome discovery requests. (Supp. Br. at 19.) For the reasons set forth above (supra p. 11-12), the Lapp factors do not apply in this case. Nor do the Lapp factors in any way suggest that the reason why the owner of a mark chose to use the mark is relevant to the issue of ownership. To the contrary, trademark rights depend on priority of use. Importantly, Defendants do not and cannot claim that they used the "Gentex" or "SPH" marks before Gentex.

## H.    Gentex's Response to Defendants' Fifth Joint Request for Production of Documents Is Not Incomplete.

In Paragraph 8 of their Fifth Joint Request for Production of Documents, Defendants requested "[a]ll correspondence . . . to competitor helicopter helmet vendors . . . regarding advertising . . . for the sale of SPH-style or model helmets . . . and information in Gentex's files regarding all sales by such vendors." (Ex. I to Defs.' Supp. Br. ¶ 18.) The request is plainly overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Nonetheless, Gentex agreed to produce correspondence between itself and any competitors suspected of infringing on the "SPH" marks, including letters and emails between itself and Mr. Abbott and/or Helicopter Helmet LLC. (Id.) To the extent other responsive documents are located, they will also be produced.

## I.    Defendants Have Not Established Good Cause To Triple the Number of Allowable Requests for Admission.

Defendants offer no good cause for increasing by 200% the number of allowable requests for admission. They claim that allowing more discovery will "shorten and simplify trial" (Supp. Br. at 21) but do not explain how the challenged requests — none of which are in any way relevant — or allowing more

19

requests will accomplish this purpose. They also claim that this case "has been expanded"[14] since the Joint Case Management Plan was filed (Supp. Br. at 22), but this is no justification for surpassing by 200% the limit on requests for admission established by Local Rule 36.1. Put simply, there is no need or justification for additional requests for admission. Defendants' request to exceed the limit established by Local Rule 36.1 should be denied. Likewise, Defendants' request to compel additional responses to Interrogatory No. 1 of their Third Set of Interrogatories (which is premised on the excessive requests for admission) (Supp. Br. at 22) should be denied.

## J.  Defendants Should Be Barred From Serving Additional Requests for Production of Documents.

Defendants have collectively served 247 requests for production of documents in this case. They recently attempted to bypass the procedure in Rule 34 by serving 19 additional requests for production by means of a letter dated November 17, 2014. This informal procedure deprives Gentex of the protections in Rule 34 and constitutes a plain abuse of the discovery process. Defendants should be prevented from serving additional requests for production of documents.

---

[14] The only material change since the Joint Case Management Plan is the entry of appearance by counsel funded by Mr. Abbott's insurance policy.

**K.    Defendants Should Be Limited to the Number of Depositions Set Forth in the Joint Case Management Plan and the Length of Depositions Set Forth in Rule 30(d)(1).**

Unwilling to contemplate an end to discovery, Defendants propose to enlarge the number of permitted depositions, to extend the length of depositions beyond the 7-hour limitation in Rule 30(d)(1) and to recall the two witnesses who have already been deposed.  They offer no good cause for such harassing requests and there is no good cause.  As noted above, discovery has "ultimate and necessary boundaries."  Oppenheimer Fund, Inc., 437 U.S. at 351, 98 S. Ct. at 2389 (citation and internal quotation marks omitted).  Defendants should be required to accede to those boundaries.

**L.    Defendants Should Not Be Allowed To Take the Deposition of Gentex's Former General Counsel.**

Without identifying any relevant, non-privileged area of questioning, Defendants propose to take the deposition of Gentex's former in-house counsel, Kenneth Lee, Esquire.  The request is demonstrably improper and should be denied.  See Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986) (party not allowed to take deposition of opposing counsel unless he can show that no other means exist to obtain the information, the information sought is

21

relevant and non-privileged and the information is crucial to preparation of case);

In re Linerboard Trust Litig., 237 F.R.D. 373, 385 (E.D. Pa. 2006) (adopting test

in Shelton and observing that "a deposition of opposing counsel is not encouraged

and is typically permitted only where a clear need is shown"); Orlando v. Opera

Company of Philadelphia, No. 95-CV-3860, 1996 WL 421956, at *1 (E.D. Pa.

July 24, 1996) (granting protective order precluding taking of counsel's deposition

and referring to "increasing practice of taking opposing counsel's deposition as a

negative development in the area of litigation").

## II.   Defendants Should Be Compelled To Fulfill Their Discovery Obligations.

In stark contrast to Defendants' claim that Gentex has not been

forthcoming in producing obviously extraneous and completely irrelevant

information, there are seven highly relevant areas in which Defendants have

materially failed in their discovery obligations:

- Defendants have unreasonably limited their production of sales records and other information to the period from 2009 to the present.
- Defendants have admittedly produced sales records that have been "recreate[d]" and "may not be identical to the invoices received by customers." (See letter from Mr. Chasan dated

March 7, 2014 (attached hereto as Exhibit "B").)

- Defendant Ronald Abbott refuses to identify other business entities in which he has an ownership or other property interest as requested in No. 11 of Gentex's First Request for Production of Documents.  (Defs.' Resps. to Pl.'s Request for Production are attached hereto as Exhibit "C.")

- Defendants have refused to produce information that is relevant to quantify their allegedly infringing sales, including, but not limited to, export licenses relating to sales of the subject products and customer complaints and returns.  (See Defs.' Resps. to Pl.'s Request for Production Nos. 22, 23.)

- Defendants have not produced their advertising and promotional materials that reference "Gentex" or "SPH."  These marketing materials are directly responsive to Request No. 10 of Gentex's First Request for Production of Documents.

- Defendants repeatedly aver that other entities made infringing use of Gentex's registered marks, (see Defs.' Resps. to Pl.'s First Set of Interrogs. (attached as Exhibit "D") ¶¶ 7, 8, 10) but declined to produce any documents or materials relating to such allegations.  Any such documents are clearly responsive to Request No. 7 of Gentex's First Request for Production of Documents.

- Defendants claim to have purchased Gentex parts from Transaero, Inc. and the U.S. Army's Defense Reutilization Marketing Office (DRMO), (see Defs.' Ans. to Req. for Admission (attached as Exhibit "E") ¶¶ 1, 3), but they declined to produce any purchase orders, invoices or receipts for such purchases in response to Request No. 1 of Gentex's First Request for Production of Documents.

- Defendants attempt to defend against Gentex's false advertising claim by averring that their helmets and/or comparable helmets were tested by "the U.S. Army Aeromedical Research Laboratory . . routinely . . . since January 1, 2006," (see Defs.' Ans. to Request for Admission ¶ 7), but Defendants are

23

unwilling to produce the test reports even though such reports are clearly responsive to Request for Production Nos. 3 and 25 of Gentex's First Request for Production of Documents.

All of this information is relevant to Gentex's substantive claims as well as to calculation of its damages and should have been produced long ago.  Defendants should be compelled to make the requested materials available forthwith.

## CONCLUSION

Is it evident from Defendants' posturing that they are serving discovery requests and seeking to compel responses to those requests simply to perpetuate discovery rather than out of a legitimate need for information relating to disputed issues in this case.  Defendants' motion to compel additional discovery should be denied and Defendants should be required to reimburse Gentex for the costs and fees incurred in opposing their baseless motion.  Further, Defendants should be precluded from serving additional written discovery requests.  Finally,

Defendants should be required to serve supplemental responses to Request Nos. 1,

3, 7, 10, 11, 22, 23 and 25 in Gentex's First Request for Production of Documents.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Counsel for Plaintiff,
Gentex Corporation

MYERS, BRIER & KELLY, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date: November 18, 2014

25

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law Submitted Pursuant to October 14, 2014 Order of Court was served upon the following counsel of record via the Court's ECF system on this 18th day of November, 2014:

Edward T. Fenno, Esquire
Christina B. Humphries, Esquire
Fenno Law Firm LLC
171 Church Street, Suite 160
Charleston, SC 29401

Eric N. Mahler, Esquire
Kelly M. Ciravolo, Esquire
Mahler Law Firm LLC
1403 Wyoming Avenue, First Floor
Forty Fort, PA 18704

Bruce J. Chasan, Esquire
1500 JFK Boulevard
Two Penn Center, Suite 312
Philadelphia, PA 19102

/s/ Donna A. Walsh